REYNOLDS *v.* BLANKS.

Opinion delivered April 23, 1906.

ASSIGNMENT OF CONTRACT—PAROL EVIDENCE OF CONDITION.—Parol evidence is admissible to show that an assignment of a contract absolute in form was intended merely as security for a loan, but such proof· must be clear and decisive.

Appeal from Drew Chancery Court; *Marcus L. Hawkins,* Chancellor; reversed.

*Knox & Hardy,* for appellant.

1. Since there had been no forfeiture declared of appellant's contract up to the time of the assignment, nor any demand upon him for a surrender of the contract, and since appellee received the deed under the contract upon paying the amount due, he would not be permitted to plead a forfeiture made before the execution of the deed, even if it had been made. Equity does not favor forfeitures. 56 Ark. 107; 59 Ark. 405.

2. Oral testimony was admissible to show what the consideration and conditions of the contract were. 53 Ark. 4; 22 Vt. 160; 92 N. Y. 529. If appellant did not understand the contract in the sense claimed by appellee, he can not be held to its performance in that sense, especially since he offers to place appellee *in statu quo.* 52 Ark. 93. He can not be held to the fulfillment of any interpretation of the contract to which he did not at the time give his consent. 7 Am. & Eng. Enc. Law (2 Ed.), 110, par. 3 and note 1; 123 Mo. 352; 17 Ark. 78; 1 Ark. 415; 15 Ark. 555. Before he can be bound in the sense claimed by appellee it must appear that he intended to be so bound. 34 Ark. 303; 52 Ark. 93.

3. The consideration which appellee claims to have paid is of itself so totally inadequate as to show that the transaction was not a sale.

4. The evidence and the circumstances establish the allegation of fraud. It may be presumed from the advantage taken of the appellant. 41 Ark. 186. Since it is proved that appellant was seeking a loan upon the security of the assignment of his bond, if appellee understood it differently, it was his duty to make known his understanding, and his remaining silent, or failing to explain his understanding, 'was a concealment amounting to fraud. 1 Perry on Trusts (5 Ed.), § 178. If appellee intentionally or inadvertently misled him into believing he was signing the contract as a security for a loan, it is void as a fraud upon appellant. 17 Ark. 498; *Ib.* 71. The relations existing between the parties, the ignorance and mental incapacity of the one and the superior business ability of the other, and the circumstances surrounding the transaction, place the burden on appellee to show that no advantage was taken, and are sufficient to move a court of chancery to relieve against such advantage taken. 1 Perry on Trusts, 275, § 194; *Ib.* 206, § 210; 26 Ark. 604; 47 Ark. 148; 15 Ark. *supra.* By accepting a deed from the vendor, appellee became a trustee for appellant, and can not assume a relation of benefit or profit. 1 Perry on Trusts, 283; § 197; 33 Ark. 465. The most favorable relation he can assert for himself is that of mortgagee. 47 Ark. 528; 52 Ark. 381; 25 Ark. 604. Appellee's conduct, declarations and confidential relations with appellant, whereby appellant was misled, estop him from rights acquired under the assignment or deed to appellant's injury. 33 Ark. 495; 25 Ark. 196.

*Wells & Williamson,* for appellee.

1. Since the consideration is not expressed in the assignment, it may be proved *aliunde*; otherwise the instrument falls within the rule that oral evidence it not admissible to contradict or vary the terms of a written contract. 15 Ark. 543; 24 Ark. 210; 25 Ark. 191; 30 Ark. 186.

2. The burden is upon the party alleging fraud to prove it to the satisfaction of the court. 1 Perry on Trusts, § 213; 19 Ark. 278; 31 Ark. 163; 48 Ark. 169.

3. The chancellor, knowing the parties and witnesses, after consideration of the testimony and all the circumstances, having found that appellant's proof was not sufficiently clear to

overturn the written contract, his findings and decree should be permitted to stand.

*Knox & Hardy,* for appellant in reply.

Our courts uniformly hold that the agreement and understanding of parties may be shown, in the interpretation of written contracts by oral testimony, wherever it is necessary to show the real character of the instrument. A deed absolute on its face may be shown to be in fact a mortgage. 23 Ark. 480; 7 Ark. 505; 31 Ark. 62; 51 Ark. 433; 13 Ark. 212. An attempt to enforce a construction of a contract different from that intended, operates as if done under duress or by a person of unsound mind. 7 Am. & Eng. Enc. Law (2 Ed.), 110, par. 3, note 1.

HILL, C. J. Tony Reynolds, a negro, obtained from Wells & Williamson, as agents for a non-resident owner, a tract of 160 acres of land in Drew County. He was to receive deed upon payment of $560 within five years, with interest; and was to pay $75 per annum, as rent, but such rent payments to be credited on purchase price. He paid $178.10, and cleared 40 acres, deadened some 8 or 9 acres, built various houses, cribs and barns, and fencing. The payments for 1899 and 1900 were made; for 1901 was not made, but on March 17, 1902, $28.10 was paid. Neither Wells & Williamson nor their client, the owner, made any effort to enforce the collection or forfeit the contract.

Reynolds and appellee, Dr. Blanks, had a certain transaction, from which arose this law suit, and it was evidenced by this indorsement on Reynold's land contract:

"I hereby transfer to J. T. Blanks all my rights to the within lease.

"Attest:                                          "TONY REYNOLDS."

"E. P. BULLOCK,

"WESLEY MOSS."

Reynolds testified that he borrowed $15 of Dr. Blanks, and made this assignment of his land contract as security therefor, and that the $15 was payable on the 10th of the ensuing December, and if paid his contract was to be returned, and if not paid then this assignment to be operative, and Dr. Blanks to own his rights under the contract. Dr. Blanks's version is that Reynolds sold him his interest under the land contract for $15; that, as Reynolds was in default in not having fully made the annual pay-

ments, he doubted whether Wells & Williamson would accept the purchase price, and Reynolds was to repay by December 10th the $15 if Blanks did not get a deed, and if he did get the deed then the $15 were to be payment for Reynolds' rights under the contract. The case turns on this issue of fact. The two witnesses to the transaction are found arrayed on opposite sides. Bullock, the white witness, sustaining the negro plaintiff, and Moss, the negro witness, sustaining the white defendant.

Bullock's testimony is positive and unequivocal, and consistent throughout; Moss's testimony is seriously impaired by a written statement he signed with Bullock, setting forth the facts as subsequently testified to by Bullock and Reynolds. Bullock testifies that Moss told him, after this written statement was made, and before they testified in the case, that they could make money by changing their testimony. Moss denies this, and says he did not understand the written statement. Moss' testimony was weakened by other inconsistent statements made to disinterested parties. Dr. Blanks testified that the place needed much repair, and that the houses and fencing of little value, and that it would take $350 to put the place in good order, and then it would be worth $1,000. The testimony of Reynolds and two disinterested witnesses fix the value of this land at $1,500 at least. Blanks took the land contract with Reynolds's assignment to Wells & Williamson, and they accepted without question the purchase price, then amounting to $588.46, which Blanks paid and received deed therefor. This suit is to set aside that deed. Proper offer of repayment, demand for deed, etc., were made, and continued in the bill. The chancellor dismissed the bill, and Reynolds appealed.

Reynolds sought to borrow $15 of several parties before he went to Blanks, and he certainly went to Blanks on a borrowing, not a selling, mission. While the attesting witnesses are evenly divided, yet Moss' testimony is so contradicted that it has no value, and the case rests on Reynolds and Bullock on one side and Blanks on the other. Stronger than the number of witnesses is the character of their testimony. Blanks's version of the transaction—that this negro would sell him his rights in this contract, his home and his work for several years past for $15, and then warrant that his rights were still good not-

withstanding his default in full payment by agreeing to repay the $15 if Blanks did not get the deed—is not consistent with common experience and observation in the daily affairs of life, and does not commend itself so strongly that it must be taken against the testimony of Reynolds and Bullock.

The circumstances of the case—Reynolds starting on a borrowing expedition, the vastly disproportionate value of the rights conveyed to the consideration received, and the written statement of both the attesting witnesses shortly thereafter—all go to sustain and corroborate Reynolds and Bullock.

The appellee appeals to the rule that oral evidence is not admissible to contradict or vary the terms of a written instrument. It is as well established as the rule itself that parol evidence is admissible to show that a deed or other conveyance absolute in terms was intended as a security for debt. The evidence to establish this must be clear and decisive, but that is a question of the quantum of evidence, and not of competency of the evidence. The various cases applying this settled rule may be found collected and summarized in Crawford's Digest, col. 698, 699. The court is of opinion that the evidence in this case meets the requirements, and is satisfied that the assignment was not absolute in fact, but was a security for debt.

Reversed and remanded with direction to enter a decree in accordance with the prayer of the complaint.